UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CROSSFIT, INC., | Case No.: 18-CV-2903-CAB-BLM |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** |
| FITNESS TRADE sp. z o.o., and FITNESS TRADE sp. z o.o. sp. k., | |
| Defendants. | [Doc. Nos. 68, 72] |

This matter is before the Court on a motion to dismiss for lack of personal jurisdiction filed by Defendants Fitness Trade sp. z o.o. and Fitness Trade sp. z o.o. sp. k. (together, the "Fitness Trade Defendants"). The motion is fully briefed, and the Court deems it suitable for submission without oral argument. As discussed below, the motion is granted, and the claims against the Fitness Trade Defendants are dismissed for lack of personal jurisdiction.

## I.     Background

Plaintiff CrossFit, Inc. filed this lawsuit on December 28, 2018, naming an Ontario, Canada, corporation called Paleoethics, Inc. as the only defendant. The original complaint asserts claims for breach of contract and breach of the covenant of good faith and fair dealing, trademark infringement, and unfair competition. Paleoethics answered the

complaint and filed a counterclaim, but its counsel subsequently withdrew without a replacement, eventually resulting in the entry of default judgment.  [Doc. No. 44.] Meanwhile, on June 5, 2019, CrossFit filed the operative first amended complaint ("FAC"), which added another Canadian company, a United Kingdom company, and a Polish company, along with the Fitness Trade Defendants, which are a Polish limited liability company and a Polish limited partnership, respectively.[1]  [Doc. No. 26.]  The FAC made few unique factual allegations against these new defendants.  Instead, the FAC simply defined all of the defendants together as "Paleoethics" based on a conclusory allegation that they were acting "as a joint venture, a partnership, and/or alter egos of one another." [*Id.* at ¶ 15.]

After receiving several lengthy extensions from the Court, CrossFit contends that it finally served the summons and FAC on the Fitness Trade Defendants via the Hague Convention on April 24, 2020 [Doc. No. 57], at which time much of the world, including Poland, was locked down due to the COVID-19 pandemic.  [Doc. No. 59-2.]  According to a declaration from the Fitness Trade Defendants' chief executive officer, no one received Fitness Trade's mail during the lockdown, and he only discovered this lawsuit as a result of an internet search in June 2020.  [*Id.*]

On July 21, 2020, the Clerk of Court entered the default of the Fitness Trade Defendants.  [Doc. No. 58.]  Nine days later, on July 30, 2020, the Fitness Trade Defendants filed a motion to set aside the default and to dismiss the claims against them for lack of personal jurisdiction.  [Doc. No. 59.]  CrossFit opposed the motion and filed a separate motion for jurisdictional discovery.  [Doc. No. 62.]  On September 2, 2020, the Court set aside the default and ordered the Fitness Trade Defendants to file a separate motion to dismiss for lack of personal jurisdiction.  [Doc. No. 67.]  That motion is now fully briefed and ripe for resolution.

---

[1] According to the FAC, Fitness Trade sp. z o.o. is a Polish limited liability company, and Fitness Trade sp. z o.o. sp. k. is a Polish limited partnership.  [Doc. No. 26 at ¶¶ 9-10.]

18-CV-2903-CAB-BLM

## II.    Legal Standards

Federal Rule of Civil Procedure 12(b)(2) allows a district court to dismiss an action for lack of personal jurisdiction.  "Where defendants move to dismiss a complaint for lack of personal jurisdiction, plaintiffs bear the burden of demonstrating that jurisdiction is appropriate."  *Dole Foods Co. Inc. v. Watts,* 303 F. 3d 1104, 1108 (9th Cir. 2002).  "The court may consider evidence presented in affidavits to assist in its determination and may order discovery on the jurisdictional issues."  *Doe v. Unocal Corp.,* 248 F.3d 915, 922 (9th Cir. 2011) (citing *Data Disc, Inc. v. Sys. Tech. Ass'n, Inc.,* 557 F.2d 1280 (9th Cir. 1977)).

A court's power to exercise personal jurisdiction over a nonresident defendant is limited by two independent constraints, namely the applicable state personal jurisdiction statute and the constitutional principles of due process.  *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990); *see also In re W. States Wholesale Natural Gas Antitrust Litig*., 715 F.3d 716, 741 (9th Cir. 2013) ("[p]ersonal jurisdiction over a nonresident defendant is proper if permitted by a state's long-arm statute and if the exercise of that jurisdiction does not violate federal due process.").  "Under California's long-arm statute, California state courts may exercise personal jurisdiction 'on any basis not inconsistent with the Constitution of this state or of the United States.'"  *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (quoting Cal. Civ. Proc. Code Ann. § 410.10 (West 2004)).  Thus, "the jurisdictional analyses under state law and federal due process are the same."  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-801 (9th Cir. 2004)).

Under the Due Process Clause of the Fourteenth Amendment, to exercise personal jurisdiction over an out-of-state defendant, the defendant must have "certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted)).  This minimum contacts jurisdiction may be either "general or all-purpose jurisdiction," or "specific or case-linked jurisdiction."  *Id.* at 919 (citing *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414 (1984)).  "The

strength of contacts required depends on which of the two categories of personal jurisdiction a litigant invokes: specific jurisdiction or general jurisdiction." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015).

Here, because the motion to dismiss for lack of jurisdiction is based on affidavits and documents, CrossFit is required to make a prima facie showing that the Fitness Trade Defendants are subject to personal jurisdiction in California. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). The uncontroverted allegations in the complaint must be taken as true and factual conflicts must be resolved in CrossFit's favor. *Marvix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). In order to survive the motion to dismiss, CrossFit must show that the Fitness Trade Defendants have minimum contacts with the forum state as will allow exercise of personal jurisdiction over it, but "bare formulaic accusations" that a defendant maintains sufficient contacts with California are inadequate. *Schwarzenegger*, 374 F.3d at 800.

**III.   Discussion**

**A.   General Jurisdiction**

General jurisdiction over a corporate defendant is warranted when the defendant's "continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Int'l Shoe*, 326 U.S. at 318. The "paradigm forum" for exercising general jurisdiction over a corporation is the state(s) where the corporation "is fairly regarded as at home," i.e. in the state of its incorporation and the state of its principal place of business. *Goodyear*, 564 U.S. at 924. For foreign corporations, a court may assert its general jurisdiction "when [the corporation's] affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear*, 564 U.S. at 919 (quoting *Int'l Shoe*, 326 U.S. at 316).

There is no dispute that the Fitness Trade Defendants are Polish entities with their principal places of business in Poland, and are therefore "fairly regarded as at home" in Poland. *Id.* at 924. Further, CrossFit has not asserted, and this Court does not find, that

4

the Fitness Trade Defendants have any continuous and systematic affiliations with California that would render them "essentially at home" in this state. *Id.* at 919; *see also Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1225 (9th Cir. 2011) (finding no general jurisdiction where the defendant "has no offices or staff in California, is not registered to do business in the state, has no registered agent for service of process, and pays no state taxes"). Accordingly, the Court finds that general jurisdiction over the Fitness Trade Defendants is not warranted.

### B.    Specific Personal Jurisdiction Under Federal Rule of Civil Procedure 4(k)(1)(A)

As stated above, the parties do not dispute that the Fitness Trade Defendants are Polish entities with their principal places of business in Poland. Nevertheless, the FAC alleges, and CrossFit argues in its opposition, that this Court has specific personal jurisdiction over the Fitness Trade Defendants under Federal Rule of Civil Procedure 4(k)(1)(A). The Ninth Circuit applies a three-part test to determine whether a district court can exercise specific personal jurisdiction over a nonresident defendant:

> (1) The nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws (the "purposeful availment" requirement);
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). "The plaintiff bears the burden of satisfying the first two prongs of the test." *Id.* "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

The first prong of the Ninth Circuit test for specific jurisdiction requires CrossFit to show that the Fitness Trade Defendants either "purposefully direct[ed] [their] activities toward the forum, or purposefully avail[ed] [themselves] of the privilege of conducting activities in the forum." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017). However, "the exact form of our jurisdictional inquiry depends on the nature of the claim at issue." *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015). For claims deriving in tort (as trademark infringement claims do), the Court asks whether the defendant has purposefully directed its actions at the forum state, even if those actions took place elsewhere. *Id.* For claims deriving in contract, the Court applies a purposeful availment analysis, asking whether the defendant purposefully availed itself of the privilege of doing business in the forum state. *Id.* (quoting *Schwarzenegger*, 374 F.3d at 802). Here, CrossFit has brought various claims against the Fitness Trade Defendants deriving in both tort (claims of trademark infringement, dilution, false designation of origin, and unfair competition arising under the Lanham Act) and contract (breach of contract). Therefore, the Court analyzes both the purposeful direction and purposeful availment approaches in turn.

### i.   Purposeful Direction

In conducting a purposeful direction analysis when allegedly tortious conduct occurs outside the forum, this circuit applies the "effects" test as articulated in *Calder v. Jones*, 465 U.S. 783 (1984). Under this test, "the defendant must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Axiom*, 874 F.3d at 1069.

### 1.   Intentional Act

Under the first prong of this test, CrossFit must show that the Fitness Trade Defendants committed an intentional act. *Id.* For jurisdictional purposes, "a defendant acts intentionally when he acts with 'an intent to perform an actual, physical act in the real world.'" *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1209 (9th Cir. 2020) (quoting *Schwarzenegger*, 374 F.3d at 806). Here, the Fitness Trade Defendants committed an

intentional act when they created and managed the e-commerce site <www.paleoethicseurope.com> for Paleoethics Europe.  [Doc. No. 68-2 at ¶ 9.]  The first prong of the effects test is easily satisfied.

### 2. Express Aim

The second prong of the effects test asks whether the defendant's allegedly tortious conduct was "expressly aimed at the forum."  *Picot*, 780 F.3d at 1214.  Generally, "operating a passive website alone cannot satisfy the express aiming prong, unless it is done in conjunction with 'something more, [such as] conduct directly targeting the forum.'"  *AMA*, 970 F.3d at 1209-10 (quoting *Mavrix*, 647 F.3d at 1229).  For example, a website's operators can be found to have "expressly aimed" at a forum state where a website "with national viewership and scope appeals to, and profits from, an audience in a particular state."  *Mavrix*, 647 F.3d at 1231 (finding that a popular website with a specific focus on California's celebrity and entertainment industries subjected its operators to personal jurisdiction in California, given that the website's "economic value turns, in significant measure, on its appeal to Californians").

Here, CrossFit fails to allege that the Fitness Trade Defendants' operation of the website <www.paleoethicseurope.com> constitutes "conduct directly targeting the forum." *AMA*, 970 F.3d at 1210.  As CrossFit states in the FAC and its opposition brief, Fitness Trade operates the website <www.paleoethicseurope.com> "to market and promote Paleoethics products and to otherwise operate the Paleoethics business *in Europe*."  [Doc. No. 71 at ⅌ 15, emphasis added.]  CrossFit does not allege that the Paleoethics Europe website has any specific focus on the United States, let alone California—rather, by CrossFit's own admission, the website <www.paleoethicseurope.com> was specifically designed to market Paleoethics products to European consumers.  [*Id.*]  Further, as CrossFit notes in its opposition brief, the website <www.paleoethicseurope.com> "included a hyperlink that directed visitors from the United States to a sister Paleoethics website <paleoethics.com>–which, as Fitness Trade admits, 'caters to the United States market.'" [*Id.* at ⅌ 43.]  A hyperlink to Paleoethics' United States website at most suggests that the

Fitness Trade Defendants knew <www.paleoethicseurope.com> might have U.S. traffic. *See AMA*, 970 F.3d at 1212.  However, such knowledge, by itself, does not establish any targeting of the U.S. market.  *Id.*  The fact that the Fitness Trade Defendants directed U.S. traffic away from the Paleoethics Europe website and instead to the Paleoethics U.S. website further contradicts any allegation that the Fitness Trade Defendants directly targeted this state.  A single hyperlink hardly suffices to demonstrate that California was the "focal point" of the Paleoethics Europe website's marketing efforts.  *Axiom*, 874 F.3d at 1071.

Further, CrossFit's contention that the Fitness Trade Defendants expressly aimed their actions at the forum state is largely based on allegations of the defendants' contacts with CrossFit itself, which the Supreme Court held to be insufficient to establish minimum contacts in *Walden v. Fiore*, 571 U.S. 277 (2014).  The FAC alleges that specific jurisdiction exists over the Fitness Trade Defendants because they: (1) "purposely used CrossFit, Inc.'s trademark in [their] marketing, as alleged herein, knowing that those trademarks are owned by a resident of California;" (2) "purposely directed [their] branding and other activities . . . in a manner designed to target harm toward CrossFit, Inc. in California;" and (3) control a website (<www.paleoethicseurope.com>) that uses CrossFit's trademarks, which Fitness Trade "knows are owned by CrossFit, Inc., a California resident."  [Doc. No. 26 at ¶¶ 29-31.]  CrossFit's opposition brief further alleges that the Fitness Trade Defendants' contacts with California include: (1) "contacts directly with California resident CrossFit, Inc., including with its employees located in California;" and (2) "contacts with Paleoethics, Inc. and CrossFit, Inc. regarding receiving the benefits of the Sponsorship Agreement."  [Doc. No. 71 at p. 21.]  Each of these allegations premises personal jurisdiction over the Fitness Trade Defendants solely on CrossFit being a California entity.  However, "the plaintiff cannot be the only link between the defendant and the forum."  *Walden*, 571 U.S. at 285.  While a theory of individualized targeting— that the defendant "engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state"—is relevant to the inquiry, it will not on its own

support the exercise of specific personal jurisdiction. *Axiom*, 874 F.3d at 1070. "Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden*, 571 U.S. at 285. CrossFit fails to allege any other jurisdictionally significant contacts by the Fitness Trade Defendants with the state of California beyond their alleged contacts with CrossFit itself.

Although it is not entirely clear, CrossFit also appears to argue that the Fitness Trade Defendants are subject to personal jurisdiction in California based on their relationships with the other defendants in this case. [Doc. No. 71 at ¶ 16.] Yet, even if the Fitness Trade Defendants were engaged in some sort of joint venture with the other defendants, that Fitness Trade is connected to Canadian and European entities that may have had agreements with CrossFit or allegedly infringed CrossFit's trademarks does not establish that the Fitness Trade Defendants purposely directed any actions to California. Rather, "jurisdiction over each defendant must be established individually." *Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990); *see also Walden*, 571 U.S. at 291 (noting that it is the individual defendant at issue, "not the plaintiff or third parties, who must create contacts with the forum State"). Another defendant's actions cannot establish that the Fitness Trade Defendants had sufficient contacts with California to warrant jurisdiction here. *See Walden*, 571 U.S. at 291 ("[The] unilateral activity of a third party . . . cannot satisfy the requirement of contact with the forum State") (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)) (internal quotations omitted).

CrossFit also argues that the Fitness Trade Defendants expressly aimed their activities at California by using a server physically located in California to host the <www.paleoethicseurope.com> domain. [Doc. No. 71 at p. 22.] CrossFit contends that by hosting the domain on a California-based server owned by Namecheap, Inc., a third party to this suit, the Fitness Trade Defendants have made adequate contacts with California to warrant the exercise of specific jurisdiction. [*Id.*] However, as other district courts in this circuit have noted, "the mere location of a third party or its servers is insufficient to give rise to personal jurisdiction." *Hungerstation LLC v. Fast Choice LLC*,

No. 19-cv-05861-HSG, 2020 WL 137160, at *5 (N.D. Cal. Jan. 13, 2020); *see also WhatsApp Inc. v. NSO Group Techs. Ltd.*, No. 19-cv-07123-PJH, 2020 WL 4016812, at *12 (N.D. Cal. July 16, 2020) (finding that "the connection between defendants and any [third party's] leased server located in California is fortuitous, as "[n]either party controlled where the third parties placed their servers and the servers were not the ultimate target of the intentional act"). CrossFit fails to identify, and this Court has not located, any case finding purposeful direction where the defendant's contact with the forum state is limited to the physical location of third-party servers. If the location of a third-party server could alone create personal jurisdiction, every state's jurisdiction over nonresident defendants would increase dramatically—particularly in California due to Silicon Valley's technology industry. *See Man-D-Tec, Inc. v. Nylube Prods. Co., LLC*, No. CV-11-1573-PHX-GMS, 2012 WL 1831521, at *2 (D. Ariz. May 18, 2012) ("If the mere location of a server could create personal jurisdiction, any state where a server is located would have personal jurisdiction over any user of that server"); *see also Doe v. Geller*, 533 F. Supp. 2d 996, 1009 (N.D. Cal. 2008) ("If plaintiff's theory of jurisdiction were upheld, then the Northern District of California could assert jurisdiction over every single takedown notice ever sent to YouTube or any other company in Silicon Valley").

Further, this case is distinguishable from *Dex Systems, Inc. v. Deutsche Post AG*, 727 F. App'x 276, 278 (9th Cir. 2018), where the Ninth Circuit found specific jurisdiction based on the defendant's alleged infringement of software stored on a California server. In that case, the court held that specific jurisdiction was warranted because the plaintiff itself had a server in California and the software at issue "was located on California servers pursuant to an agreement reached by the parties." *Id.* Here, in contrast, CrossFit does not have a server in California, nor did CrossFit or the Fitness Trade Defendants have any say in where Namecheap, Inc. physically located their servers. Any contact with California resulting from Namecheap's server location is "merely a fortuitous occurrence," *id.*, and cannot alone justify the exercise of specific jurisdiction. *See Walden*, 571 U.S. at 286 (noting that due process cannot be satisfied based on "'random, fortuitous, or attenuated'

10

contacts [the defendant] makes by interacting with other persons affiliated with the State" (quoting *Burger King*, 471 U.S. at 475)).

Additionally, CrossFit alleges that the Fitness Trade Defendants expressly aimed their activities at California by using Facebook and Instagram, California-headquartered companies, to promulgate infringing content on Paleoethics Europe's social media pages. [Doc. No. 71 at p. 22.] The Court rejects CrossFit's contention that the use of such services, without more, creates a jurisdictionally relevant contact with California. In today's world, it has become nearly universal practice for businesses to operate Facebook, Instagram, and/or other social media accounts for marketing purposes. Like with third-party servers, basing personal jurisdiction on a nonresident defendant's operation of a Facebook or Instagram page would expand the reach of California's long-arm statute beyond the bounds permitted by the Due Process Clause. District courts in this circuit have repeatedly held that merely operating an account on a California-headquartered company's platform is insufficient to establish purposeful direction. *See DFSB Kollective Co. Ltd. v. Bourne*, 897 F. Supp. 2d 871, 883 (N.D. Cal. 2012) (rejecting argument that maintaining accounts on California-headquartered Internet companies' websites was sufficient to show express aiming at the California market because it "would subject millions of persons around the globe to personal jurisdiction in California"); *see also NuboNau, Inc. v. NB Labs, Ltd.*, No. 10cv2631-LAB (BGS), 2012 WL 843503, at *6 (S.D. Cal. Mar. 9, 2012) ("With *Burger King* in mind, the Court doesn't find that merely engaging Twitter and Facebook to promote one's business constitutes purposeful direction at California, simply because Twitter and Facebook happen to be based there and require users to litigate all lawsuits arising out of their accounts in California"). This Court agrees and finds that the Fitness Trade Defendants' operation of Facebook and Instagram pages is not an adequate basis for establishing purposeful direction at California.

Finally, CrossFit alleges that the Fitness Trade Defendants expressly aimed their activities at California by using the image of "California celebrity" Brooke Ence on the landing page of <www.paleoethicseurope.com>. [Doc. No. 71 at p. 22.] CrossFit reaches

the conclusion that the display of Ms. Ence's image on <www.paleoethicseurope.com> likely means that Fitness Trade has a "contractual relationship" with her.  [*Id.* at p. 19.] CrossFit then argues that because Ms. Ence is a California resident, this possible contractual relationship establishes that the Fitness Trade Defendants expressly aimed their activities at California.

CrossFit offers no conclusive evidence that Ms. Ence has a contractual relationship with the Fitness Trade Defendants.  The numerous exhibits attached to CrossFit's opposition brief appear to reflect a sponsorship agreement of some kind between Ms. Ence and Paleoethics, rather than between Ms. Ence and Fitness Trade.[2]  Nevertheless, even if a contract exists between Ms. Ence and the Fitness Trade Defendants, CrossFit has still failed to allege how the use of Ms. Ence's image is expressly aimed at the forum state.  The images of Ms. Ence attached by CrossFit allegedly appear on Paleoethics Europe's website, YouTube page and Facebook page.  [Doc. No. 71-4 at p. 135-137, p. 153-159.]  As previously discussed, there is no dispute that Paleoethics Europe's website and social media pages were designed "to market and promote Paleoethics products and to otherwise operate the Paleoethics business *in Europe*."  [Doc. No. 71 at p. 8, emphasis added.] CrossFit has not shown that Fitness Trade expressly aimed its marketing materials with Ence's image to this state or its residents.  Further, if a contractual relationship exists between Ms. Ence and Fitness Trade, the Supreme Court has held that a nonresident defendant's contract with a resident party alone is insufficient to establish minimum contacts in the forum state.  *See Burger King*, 471 U.S. at 478 ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly

---

[2] The Court has reviewed CrossFit's Motion for Leave to File Non-Electronic Exhibits.  [Doc. No. 72.] The Court assumes that the three videos sought to be filed, each depicting "California celebrity athlete" Brooke Ence engaging with the Paleoethics brand, are as described by CrossFit in its motion. Nevertheless, the Court finds that the three videos, as described, would not affect the Court's analysis of the Fitness Trade Defendants' contacts with the forum state.  Accordingly, CrossFit's motion for leave to file the USB flash drive containing these audiovisual files is **DENIED**.

is that it cannot").  Accordingly, a potential contractual relationship with a California resident, alleged to be significant based on her status as a California resident, is both "purely speculative" and too "attenuated [a] jurisdictional contact" to justify the exercise of personal jurisdiction in this case.  *Getz v. Boeing Co.*, 654 F.3d 852, 860 (9th Cir. 2011).

The Court finds that CrossFit has not met its burden of showing that the Fitness Trade Defendants' allegedly tortious conduct was "expressly aimed at the forum."  *Picot*, 780 F.3d at 1214.  Thus, the second prong of the effects test is not met.

### 3. Jurisdictionally Significant Harm

The third prong of the effects test requires CrossFit to show that the Fitness Trade Defendants caused harm that they knew was likely to be suffered in the forum state. *Mavrix*, 647 F.3d at 1231.  CrossFit's claims against the Fitness Trade Defendants are limited to allegations that the defendants infringed CrossFit's trademarks in their marketing and branding materials for Paleoethics Europe, a brand targeted to European consumers. [Doc. No. 26 at ¶¶ 29-30.]  As discussed above, allegations of infringing materials targeted to the European market are insufficient to show that harm was likely to be suffered in California.  CrossFit has failed to show that any California residents even viewed Paleoethics Europe's webpage or social media pages containing the allegedly infringing material.  Therefore, the third prong of the effects test is not met.  The Court thus finds that specific personal jurisdiction over the Fitness Trade Defendants is not warranted under a purposeful direction analysis for CrossFit's claims brought under the Lanham Act.

### ii. Purposeful Availment

When conducting a "purposeful availment" analysis in cases deriving in contract, the Court asks whether the defendant purposefully availed itself of the privilege of doing business in the forum state.  *Schwarzenegger*, 374 F.3d at 802.  Such a showing "typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there."  *Id*.  The defendant must have "performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state."  *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) (internal quotations

omitted).  In return for availing itself of the benefits and protections of the forum state's laws, "a defendant must—as a quid pro quo—'submit to the burdens of litigation in that forum.'" *Schwarzenegger*, 374 F.3d at 802 (quoting *Burger King*, 471 U.S. at 476).

CrossFit does not explicitly address the concept of purposeful availment, instead focusing its argument on whether purposeful direction is met.  Nevertheless, some of CrossFit's arguments for finding specific jurisdiction are more properly analyzed under a purposeful availment framework.  CrossFit first argues that the Fitness Trade Defendants purposefully availed themselves of the privilege of doing business in California by contracting with Namecheap, Inc., as Namecheap was a California resident at the time Fitness Trade began using Namecheap's services.  [Doc. No. 71 at ¶ 35.].  CrossFit further contends that the Fitness Trade Defendants' assent to the choice-of-law provision in Namecheap's Terms of Service [Doc. No. 71-4 at p. 109] demonstrates the defendants' intent to avail themselves of California law.

First, to the extent that CrossFit suggests that merely having contracted with a California company subjects the Fitness Trade Defendants to personal jurisdiction in this state, its argument has been expressly rejected by the Supreme Court in *Burger King*: "If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."  *Burger King*, 471 U.S. at 478.  Thus, even if Namecheap were a California resident at the time that Fitness Trade began using its services (which the parties dispute), this fact alone is immaterial to the Court's analysis.

Second, Fitness Trade's agreement to the choice-of-law provision in Namecheap's Terms of Service cannot, on its own, satisfy purposeful availment.  Terms of service are "contracts of adhesion that users choose to either accept or reject based on whether they desire to use a company's service." *WhatsApp*, 2020 WL 4016812, at *15.  Users agreeing to an entity's Terms of Service have no ability to negotiate the terms prior to acceptance. The terms agreed to in such a contract of adhesion are thus far from a purposeful choice by the defendants to avail themselves of the benefits and protections of California's laws.

Nevertheless, a choice-of-law provision may be relevant "when combined with other facts that defendants intended to avail themselves of California law," *id.*, such as an ongoing relationship between sophisticated entities that requires continuing consent to the application of California law. *See Facebook, Inc. v. Rankwave Co., Ltd.*, No. 19-cv-03738-JST, 2019 WL 8895237, at *6 (N.D. Cal. Nov. 14, 2019) (finding the defendant's consent to the plaintiff's Terms of Service and choice-of-law provision dispositive when the defendant was a sophisticated entity and its contracts with the plaintiff "gave rise to continuing relationships and obligations" with California residents); *see also Google, Inc. v. Eolas Techs. Inc.*, No. 13-cv-05997-JST, 2014 WL 2916621, at *3 (N.D. Cal. June 24, 2014) (finding the choice-of-law provision persuasive where the parties entered into a 20-year licensing agreement in California, agreed to various ongoing obligations, and the defendant was formerly a California entity).  No similar facts exist here.  The parties do not dispute that the Fitness Trade Defendants used Namecheap's services to register and create the <www.paleoethicseurope.com> domain.  However, as discussed above, the website hosted by Namecheap was solely marketed to European consumers.  There is no indication that the defendants intended to purposefully avail themselves of California law by registering the web domain <www.paleoethicseurope.com> with Namecheap, nor that they had ongoing contact with any California residents as a result of their contract with Namecheap.  Although the Fitness Trade Defendants may be considered sophisticated entities, they were "only using [Namecheap's] service as any individual consumer might." *WhatsApp*, 2020 WL 4016812, at *16.  If agreeing to a company's Terms of Service were alone sufficient to establish purposeful availment, "then any user simply by accepting the terms of service and otherwise having no interaction with California could be said to have purposefully availed him or herself of California's laws." *Id.*  Moreover, CrossFit advances

no legitimate explanation for why a third party's Terms of Service, even if agreed to by the defendant, are relevant to the claims asserted by CrossFit here.[3]

In sum, CrossFit has failed to demonstrate either purposeful direction or purposeful availment. Because CrossFit has not satisfied the first part of the test for specific personal jurisdiction, the Court need not address whether CrossFit's claims arise out of or relate to the Fitness Trade Defendants' forum-related activities or whether the exercise of jurisdiction would be reasonable. *See Pebble Beach*, 453 F.3d at 1155 (concluding that because plaintiff's claim failed the first prong of the minimum contacts test "we need not address whether the claim arose out of or resulted from Caddy's forum-related activities or whether an exercise of jurisdiction is reasonable per the factors outlined by the Supreme Court in *Burger King Corp.*, 471 U.S. 462, 476-77 [] (1985)"); *Attilio Giustio Leombruni S.p.A v. Lsil & Co., Inc.,* Case No. CV 15-002128 BRO (Ex), 2015 WL 12743878, at *10 (C.D. Cal. May 29, 2015) (declining to address the reasonableness of exercising jurisdiction where plaintiff failed to demonstrate purposeful availment).

Nevertheless, the Court would conclude that CrossFit also fails to satisfy the second and third prongs of the minimum contacts test. CrossFit has not shown that its claims arise out of or relate to Fitness Trade's forum-related activities, and the Court finds that the "balance of factors supports the conclusion that exercising jurisdiction over [the Fitness Trade Defendants] would be unreasonable." *AMA*, 970 F.3d at 1212 n.9. First, CrossFit has not established that Fitness Trade ever made contact with the forum state via Paleoethics Europe's webpages (where the alleged wrongdoing occurred). Accordingly, CrossFit's claims that trademark infringement occurred on Paleoethics Europe's website and social media pages cannot arise out of or relate to any alleged contacts by Fitness Trade

---

[3] CrossFit advances similar arguments that the Fitness Trade Defendants purposefully availed themselves of California's laws by agreeing to California jurisdiction in connection with their use of Facebook and Instagram. [Doc. No. 71 at p. 22.] The Court finds that the consideration of any choice-of-law provision agreed to in Facebook or Instagram's Terms of Service follows the same analysis as to Namecheap's Terms of Service, and is accordingly unpersuasive to the Court's determination of purposeful availment.

with the forum state.  CrossFit makes the conclusory allegation that the infringement "never would have occurred" had CrossFit and Paleoethics not entered into a Sponsorship Agreement, but fails to explain how this agreement between the plaintiff and another defendant relates to Fitness Trade's alleged wrongdoing on the Paleoethics Europe webpages.  Similarly, CrossFit's claims of trademark infringement against Fitness Trade do not arise out of an apparent sponsorship agreement between another defendant and Brooke Ence.  Nor do CrossFit's claims arise out of Fitness Trade's contacts with Namecheap, Facebook, and Instagram, as Fitness Trade did not infringe any trademarks solely by using these companies' services and agreeing to their Terms.  None of these alleged contacts with the forum relate to whether or not Fitness Trade infringed CrossFit's trademark in the marketing materials it prepared for Paleoethics Europe.  As to the third prong, exercising jurisdiction over two Polish entities would be unreasonable given the defendants' limited contacts with the forum, the burden on Fitness Trade to defend in the forum, potential conflicts with Poland's sovereignty and its potential as an alternative forum.  *Id.*  Although CrossFit has an interest in adjudicating its claims in its chosen forum, the Court finds that the balance of factors weighs against finding that the exercise of jurisdiction would be reasonable in this case.

Accordingly, the Court finds that CrossFit has not met its burden of demonstrating that the Fitness Trade Defendants are subject to personal jurisdiction in California under Federal Rule of Civil Procedure 4(k)(1)(A).

### C. Specific Personal Jurisdiction Under Federal Rule of Civil Procedure 4(k)(2)

In the alternative, CrossFit contends that this Court may exercise personal jurisdiction over the Fitness Trade Defendants pursuant to Federal Rule of Civil Procedure 4(k)(2), known as the federal long-arm statute.  Rule 4(k)(2) "permits federal courts to exercise personal jurisdiction over a defendant that lacks contacts with any single state if the complaint alleges federal claims and the defendant maintains sufficient contacts with the United States as a whole."  *Getz*, 654 F.3d at 858.  Rule 4(k)(2) requires that (1) the

claim arise under federal law, (2) the defendant not be subject to the personal jurisdiction of any state court of general jurisdiction, and (3) the federal court's exercise of personal jurisdiction comport with due process. *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 461 (9th Cir. 2007). Here, CrossFit's claims brought under the Lanham Act (alleging trademark infringement, dilution, false designation of origin, and unfair competition) satisfy the first prong. This circuit has held that the second requirement is met when the defendant does not concede that it is subject to jurisdiction in another state, which the Fitness Trade Defendants have not. *Id.* at 462. Accordingly, the Court must analyze whether the third requirement—that the exercise of personal jurisdiction over the Fitness Trade Defendants comport with due process—is met here.

The due process analysis under Rule 4(k)(2) is "nearly identical" to the traditional personal jurisdiction analysis under Rule 4(k)(1)(A), "with one significant difference: rather than considering contacts between [the defendant] and the forum state, we consider contacts with the nation as a whole." *Id.* Therefore, the Ninth Circuit's three-part test for specific personal jurisdiction applies, meaning the Court must determine: (1) whether the Fitness Trade Defendants purposefully directed their activities at the United States as a whole; (2) whether CrossFit's claims arise out of or relate to the Defendants' forum-related activities; and (3) whether the exercise of jurisdiction is reasonable in this case. *Schwarzenegger*, 374 F.3d at 802.

CrossFit again fails to show that the Fitness Trade Defendants expressly aimed their activities at the relevant forum, here the United States. CrossFit argues that the Fitness Trade Defendants' federal contacts include their importation of the at-issue products from the United States, and their effect on U.S. citizens who access and are confused by Fitness Trade's allegedly false advertising. [Doc. No. 71 at p. 5.] First, even if Fitness Trade's action of importing products from the United States constitutes purposeful direction at the United States, CrossFit's trademark infringement claims do not arise out of or relate to Fitness Trade's importation activities. Rather, CrossFit alleges that infringement occurred when Fitness Trade "purposely used CrossFit, Inc.'s trademarks in its marketing" and

branding activities.  [Doc. No. 26 at ⁋ 29.]  Second, as previously discussed, CrossFit has presented no evidence that Fitness Trade purposefully directed its activities at United States citizens by operation of its <www.paleoethicseurope.com> website.   CrossFit's only suggestion that Fitness Trade expressly targeted the United States is a hyperlink to Paleoethics' United States website on its Paleoethics Europe website, which is too "random, fortuitous [and] attenuated" to be a jurisdictionally significant contact. *Burger King*, 471 U.S. at 475.

The Court finds that CrossFit has not met its burden of establishing that the Fitness Trade Defendants have sufficient contacts with the United States as a whole to be subject to personal jurisdiction under Rule 4(k)(2).  Although the first two requirements are met, exercising personal jurisdiction over the Fitness Trade Defendants in this case would not comport with due process of law.  Accordingly, the Court rejects CrossFit's contention that it has personal jurisdiction over the Fitness Trade Defendants pursuant to Rule 4(k)(2).

## IV.    Motion for Jurisdictional Discovery

CrossFit separately moves for discovery concerning the existence of personal jurisdiction over the Fitness Trade Defendants.   "[T]he question of whether to allow discovery is generally within the discretion of the trial judge." *Am. W. Airlines, Inc. v. GPA Grp., Ltd.*, 877 F.2d 793, 801 (9th Cir. 1989).  A decision "to deny discovery will not be disturbed except upon the clearest showing that the denial of discovery results in actual and substantial prejudice to the complaining litigant." *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (internal citations omitted).  While "purely speculative allegations of attenuated jurisdictional contacts" are insufficient to warrant jurisdictional discovery, *Getz*, 654 F.3d at 860, "discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Laub*, 342 F.3d at 1093 (citing *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir.1986); *Boschetto*, 539 F.3d at 1020).

CrossFit's request for discovery concerning personal jurisdiction merely underscores how its allegations of personal jurisdiction border on frivolous.  The sum total

of the allegations against the Fitness Trade Defendants are that they are Polish entities who infringed CrossFit's trademarks in Europe and may have relationships with Canadian and European entities who also infringed CrossFit's trademarks and breached contracts with CrossFit.  Assuming the truth of these allegations, they do not support personal jurisdiction over the Fitness Trade Defendants, so discovery of evidence to support them will not help the Court.  Further, the Court declines to allow CrossFit the opportunity to engage in discovery as a fishing expedition for a new theory of personal jurisdiction over the Fitness Trade Defendants.  Accordingly, Plaintiff's request for jurisdictional discovery is **DENIED.**

## V.    Conclusion

For the reasons set forth above, it is hereby **ORDERED** that the Fitness Trade Defendants' motion to dismiss for lack of personal jurisdiction is **GRANTED** without prejudice to CrossFit pursuing its claims in a jurisdiction where the Fitness Trade Defendants are subject to personal jurisdiction.  The Clerk of Court will **CLOSE** this case.

It is **SO ORDERED**.

Dated:  November 2, 2020

_____
Hon. Cathy Ann Bencivengo
United States District Judge

18-CV-2903-CAB-BLM